IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA CLOUD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 14-3219-CV-S-ODS ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for Supplemental Security Income benefits under Title XVI. The Commissioner's decision is affirmed.

## I. STANDARD OF REVIEW

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff alleged a disability onset date of January 14, 2005 which was later amended because she filed her claim in March 2011. Her claimed disability involves a combination of degenerative disc disease, asthma, migraine headaches, depression and high cholesterol. Plaintiff did not submit a medical opinion from her treating physician. Plaintiff underwent two consultative examinations: one performed by Dr. Charles Ash, and one performed by Dr. Thomas Corsolini. Plaintiff's primary arguments revolve around the ALJ's decision to credit Dr. Corsolini's consulting opinion over Dr. Ash's consulting opinion.

Dr. Ash examined Plaintiff in August 2011 and noted that she could stand and move satisfactorily without a limp or list and walk on toes and heels satisfactorily. While Plaintiff had "moderate difficulty arising from the exam table" she had "no difficulty arising from the chair, dressing or undressing." He noted limited motion in Plaintiff's cervical spine accompanied by tenderness in the mid and lower cervical region but no muscle spasms or deformities. R. at 363. Plaintiff exhibited normal range of motion in her upper extremities without weakness, deformity or atrophy, and strong grip/pinch strength in both hands. Plaintiff also exhibited normal motion in her hips, knees and ankles with no deformities. Dr. Ash diagnosed Plaintiff as suffering from "[p]robable degenerative arthritis cervical spine" and "[p]robable degenerative lumbar spine with sciatica and slight sensory deficit." Based on his findings he concluded Plaintiff could "stand and walk two hours in a workday. She can sit eight hours in a workday. She can lift 20 pounds occasionally and 10 pounds frequently. She has slight sensory deficit using the hands." R. at 364. Dr. Ash did not indicate that he had access to or reviewed Plaintiff's medical records.

A hearing was held in October 2012 – more than a year after Dr. Ash's examination. Plaintiff continued receiving treatment in the interim, including undergoing an MRI in October 2011. At the end of the hearing, the ALJ stated: "I think I need more information. I'm going to ask the state agency to schedule a consultative exam with a doctor of physical medicine and rehab so we can get an assessment of functional . . . capacity so we'll leave the record open for that . . . ." R. at 66-67.

2

Dr. Corsolini saw Plaintiff in November 2012, and he reviewed Plaintiff's medical records as part of his evaluation. The MRI revealed the status of her 2004 discectomy and fusion at C5-6, a "minimal disc bulge at the C67 level, [and] no evidence of neural foraminal stenosis." A bone density test from June 2011 revealed "changes consistent with osteoporosis." An x-ray from February 2011 "discuss[ed] some anterior degenerative spurring from T4 through T 12, [and] mild degenerative changes L34 and L45." R. at 403.

Plaintiff had a "relatively low willingness to demonstrate any movements during the physical examination" and Dr. Corsolini assessed her effort as "Poor." Nonetheless, he determined her reflexes were intact in all four extremities and that there was no muscle atrophy in any of her extremities. Plaintiff demonstrated limited range of motion in her cervical rotation, however. The straight leg raising test indicated "low back discomfort, but no leg pain reported." Dr. Corsolini concluded that despite Plaintiff's "limited levels of apparent effort . . . her diagnostic studies are not significantly abnormal, and her physical examination shows no evidence of specific neurological injury or abnormality." R. at 403-05. His narrative also recites that Plaintiff's upper extremity range of motion was within normal limits. R. at 403.

Dr. Corsolini's medical source statement ("MSS") indicates Plaintiff can lift and carry up to ten pounds frequently and up to twenty pounds occasionally, sit for two hours at a time and eight hours per day, and stand and walk for one hour at a time and four hours per day. R. at 397-98. The MSS also indicates Plaintiff can occasionally reach overhead and reach in other directions. R. at 399.

The hearing commenced in April 2013. In posing questions to the VE, an inconsistency was observed between Dr. Corsolini's assessments that (1) Plaintiff's upper extremity use was within normal limits and (2) Plaintiff could only occasionally reach overhead and in all other directions. R. at 34-35. Counsel also observed ambiguity as to whether Dr. Corsolini's MSS meant to indicate that (1) Plaintiff could stand or walk a total of four hours per day combined or (2) Plaintiff could stand or walk for four hours each per day, for a total of eight hours combined. R. at 40. Questions designed to clarify these issues were submitted in writing to Dr. Corsolini after the hearing. He responded that "the combined total standing and walking in an 8 hour work

3

day" that Plaintiff could perform was eight hours. He answered "no" when asked whether, "[a]part form her ability to reach overhead, is Ms. Cloud unable to frequently extend her arms in front of her body in all other directions?" R. at 413-14.[1]

The ALJ found Plaintiff could lift ten pounds frequently and twenty pounds occasionally, stand for one hour at a time, walk for one hour at a time, stand or walk a total of eight hours per day, and sit two hours at a time and eight hours per day. He also found Plaintiff could occasionally reach overhead but had no other restrictions on her ability to reach or use her upper extremities. R. at 19. Based on these findings, other factors included in the residual functional capacity, and the vocational expert's testimony, the ALJ found Plaintiff could not perform her past relevant work but could perform work as a light unskilled production assembler or a light unskilled small products assembler.

In comparing the consultants' reports, the ALJ noted that unlike Dr. Corsolini, Dr. Ash did not consider Plaintiff's medical records and (also unlike Dr. Corsolini) Dr. Ash did not have access to "medical evidence that was not available at the time of his examination" – a reference, minimally, to the October 2011 MRI. The ALJ also noted that Dr. Ash's opinion regarding Plaintiff's limited ability to stand was not supported by either (1) other evidence in the Record or (2) Dr. Ash's own examination. R. at 23.

## III. DISCUSSION

### A.

Plaintiff presents two arguments regarding the ALJ's decision to generally prefer Dr. Corsolini's opinion over Dr. Ash's; the Court will address the second one first. Plaintiff contends the ALJ erred in even sending Plaintiff for a second consultative examination. As a general matter, the Court finds it hard to accept that an ALJ errs in trying to gather more information. As a legal matter, Plaintiff's authority does not stand for the proposition she advances. By regulation, the Commissioner has stated that

---

[1]Meaning, she is able to frequently extend her arms in front of her body in all other directions.

4

"[s]ituations may require a consultative examination. . . . Some examples of when we might purchase a consultative examination to secure needed medical evidence . . . . include but are not limited to" a list of four situations. 20 C.F.R. § 416.919(a). The regulation does not (as Plaintiff suggests) preclude an ALJ from seeking a consultative opinion in other circumstances. To the contrary, the regulation specifically states the list consists of examples, and the list is not exhaustive.

Assuming the ALJ's decision to obtain additional information is subject to judicial review, the Court discerns no error. Most notably, Dr. Ash had not considered Plaintiff's medical records and Dr. Ash did not have access to the MRI performed after his consultative examination. These observations provided ample justification for the ALJ's decision to solicit another consultation.

Plaintiff's other argument regarding the consultants is that the ALJ erred in according more credence to Dr. Corsolini's opinion than to Dr. Ash's. She concedes both were consultants and that Dr. Corsolini reviewed the diagnostic tests while Dr. Ash did not. Nonetheless, she contends the ALJ was obligated to accept Dr. Ash's conclusions because (1) Dr. Ash is an orthopedic specialist and (2) Plaintiff did not put forth full effort when she was examined by Dr. Corsolini, so his opinions are suspect. As to the first point, "Dr. Corsolini is a board certified physical medicine and rehabilitation specialist and a specialist in evaluating impairments . . . ." R. at 23. In a "battle of qualifications," neither doctor has a clear edge – or at least, neither has such an edge that the Court can conclude the ALJ's decision was wrong. Plaintiff's second argument is somewhat remarkable: she argues, essentially, that her own poor effort or lack of cooperation during Dr. Corsolini's evaluation disqualifies Dr. Corsolini's opinion such that the ALJ was obligated to ignore it. The Court declines to adopt such a holding.

## B.

Plaintiff next argues that, having found Dr. Corsolini's opinion more credible, the ALJ was obligated to adopt Dr. Corsolini's assessment that Plaintiff could only "frequently" reach in front of her and could only "frequently" handle, finger, feel, or

5

push/pull with her hands. According to the MSS, the ability to do something "frequently" means the activity could be performed between 1/3 and 2/3 of the time. Plaintiff argues the ALJ's failure to include this limitation in the RFC rendered the hypothetical questions posed to the vocational expert ineffective. Plaintiff also argues the ALJ erred because he "relied exclusively on Dr. Corsolini's opinion which was based solely on objective medical evidence, in error, as the ALJ failed to adequately consider other evidence of record." Plaintiff's Brief at 16-17. The Court will address these arguments together because they answer each other: in summary, the ALJ considered the entire Record (and not just Dr. Corsolini's opinion) in formulating Plaintiff's RFC, and the ALJ was not obligated to accept the entirety of any doctor's opinion.

The ALJ addressed Plaintiff's testimony and concluded that her "descriptions of her symptoms and limitations are generally inconsistent and unpersuasive." R. at 20. He noted Plaintiff's prescribed treatment was not consistent with a disabling condition, the inconsistencies between the objective evidence and her testimony, and the fact that none of her health care providers suggested she was unable to work. R. at 20. As particularly relevant to Plaintiff's claimed limitation on use of her extremities, the ALJ discussed nerve conduction tests from 2007 that were normal. He also discussed examinations in 2011 prompted by her complaints of hand numbness that revealed no abnormalities. R. at 20.

Thus, the Record establishes that the ALJ considered the entire Record and did not rely exclusively on Dr. Corsolini's report. The Record also provides the ALJ with a basis for not including restrictions on Plaintiff's ability to use her hands except for overhead reaching. First, the objective tests provided a basis for rejecting her testimony. Second, the ALJ found Plaintiff's testimony was not credible. Third, Dr. Corsolini's narrative did not provide any information that provided a basis for his conclusion that Plaintiff was limited in this regard.

Finally, Plaintiff argues the ALJ erred in finding her testimony was not credible. However, the ALJ was entitled to rely on the inconsistencies between her testimony and the medical records, her poor effort during Dr. Corsolini's evaluation, her poor work history, and the nature of the medical treatment she received. Plaintiff cites factors that favor her credibility, but the credibility decision is one for the ALJ to make and the Court

6

must defer to the ALJ's resolution of conflicting evidence so long as the conclusion is supported by substantial evidence. E.g., Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

For these reasons, the ALJ's failure to include limitations on Plaintiff's ability to use her upper extremities (other than with respect to reaching) and the ALJ's credibility determination were supported by substantial evidence in the Record as a whole and the

## IV.  CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: February 25, 2015

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT